McCarty *et al. v.* Love, Superintendent of Banks.*

(Division B. Jan. 3, 1927.)

[110 So. 795. No. 26064.]

1. Insurance. *Insurance company's president held not personally liable on surety bond because company's act in signing bond was ultra vires.*

   President of insurance company *held* not personally liable on surety bond, signed in his capacity of president of company, because of fact that act of company, in signing bond, was *ultra vires* under its charter powers.

2. Corporations. *Corporate agent is not personally liable on contract, entered into for principal, on ground execution of contract was ultra vires.*

   Agent of corporation, entering into contract for principal, cannot be held personally liable on contract on ground that act of principal, in executing contract, was *ultra vires.*

3. Principal and Agent. *Agent does not warrant principal's authority to contract.*

   In the execution of contract, an agent does not warrant the authority of principal to enter into contract.

4. EVIDENCE. *Parties are presumed to be informed of powers in corporation with whom they contract.*

   Parties contracting with corporation are presumed to be informed as to powers of corporation.

5. EVIDENCE. *Handwriting witness need not be an expert.*

   Handwriting witness need not be an expert, since unskilled may give opinion as to genuineness of signature, based on actual knowledge of person's handwriting.

6. PRINCIPAL AND SURETY. *Evidence held to show signature on surety bond was forgery.*

   In suit on bond of bank cashier, preponderance of evidence *held* to show that purported signature on surety bond was a forgery.

7. APPEAL AND ERROR. *Ordinarily, chancellor's finding of facts will be disturbed only when against great preponderance of evidence.*

   Ordinarily, chancellor's finding of facts will not be disturbed, yet, where such finding is against great preponderance of evidence, supreme court has duty to substitute its judgment for that of the chancellor.

*Corpus Juris-Cyc. References: Agency, 2CJ, p. 813, n. 93 New; Appeal and Error, 4CJ, p. 900, n. 96; p. 902, n. 4; Corporations, 14aCJ, p. 174, n. 63; Evidence, 22CJ, p. 104, n. 80 New; p. 625, n. 20, 21; Insurance, 32CJ, p. 1011, n. 85 New; Principal and Surety, 32Cyc, p. 138, n. 54 New.

APPEAL from chancery court of Sunflower county. Hon. E. N. THOMAS, Chancellor.

Suit by J. S. Love, Superintendent of Banks, on behalf of the State Banking Department against D. A. Carr, P. R. McCarty, J. E. Walker, and others. Decree for plaintiff, and last two defendants named appeal. Reversed and decree rendered.

*Forrest G. Cooper,* for appellants.

*Is J. E. Walker personally liable?* This is an interesting question of agency. The facts are not in dispute. J. E. Walker was the president of the Mississippi Beneficial Life Insurance Company. This insurance company had no power to execute a surety bond. Even if the

board of directors had authorized the execution of this bond, the company would not have been liable. If the insurance company had that power, the acts of its president in signing the contract would have been binding. No one questions the right of a president to execute a surety bond on behalf of a surety company. This is not a case of an agent exceeding his own authority as president. It is a case where the agent attempted to do something which was above and beyond the scope of the authority of his principal.

We recognize the rule that an agent who oversteps the authority of his principal becomes liable if he willfully misrepresents the power of his principal to those with whom he deals or if he fraudulently conceals the lack of authority and is dealing with those who rely upon his representation that his principal has that authority.

But the rule, as we understand it, is that an agent who, making no representations, concealing nothing, signs a contract for his principal with those knowing the limitation of the powers of his principal, or constructively knowing it, or are put upon their guard in any way and having such warning merely take such signature for what it is worth, having no .remedy against the agent personally.

The banking department is seeking to fix liability on Walker personally merely from the fact that he exceeded the powers of his principal. We have found no authority to justify this position. On the contrary, there are many well-reasoned cases holding that such an agent is not personally liable in the absence of any misrepresentation or misconduct where he is dealing with those with access to the proper information. He who deals with an agent cannot presume either as to the powers of his agency or as to the powers of his principal. *Thilmany* v. *Iowa Paper Bag Co.,* 75 A. S. R. 259; *Knickerbocker* v. *Wilcox,* 21 A. S. R. 595; *Merchants & Planters, etc.,* v. *Streuby,* 91 Miss. 211, 44 So. 791, 124 A. S. R. 651.

There is another uncontradicted fact in this record which exonerates Walker from liability personally as well as his principal. When asked to sign the name of his company to the bond, Walker agreed to do it on condition that there be obtained as an additional surety P. R. McCarty who was solvent. This was a condition precedent to any liability on the part of either the agent or his principal. The bond accepted upon this condition. P. R. McCarty did not sign; therefore, no liability ever attached. *State* v. *Allen,* 32 Cyc. 45, 46, 47 and part of 49; 69 Miss. 508, 10 So. 473, 30 A. S. R. 563; *Southern Cotton Oil Co.* v. *Bass* (Ala), 28 So. 576; *Sharp* v. *Allgood* (Ala.), 14 So. 16; *Lynn County* v. *Farish,* 14 Am. Rep. 389.

*The liability of P. R. McCarty.* The matter was never broached to P. R. McCarty, but her name was forged to the bond. The first moment her attention was directed to the fact that her name was on the bond, she denied emphatically signing it, before she had even seen it. She never saw the bond, according to the record, until after this suit was filed and the writer borrowed it from opposing counsel and showed it to her.

Being of the firm conviction that the forgery is evident, she brings many original writings into court. The members of this court can examine and compare the handwriting. Not only do we give the court the benefit of this comparison of handwritings, but we introduce seven other witnesses on handwriting. All of these except S. A. Hamel, cashier, and A. C. Powell were personally familiar with her handwriting and told the court frankly that in their judgment her signature on the bond was not genuine.

*Was there a valid acknowledgment or affidavit on the bond?* This brings us to the only reliance of the banking department to support their case. There is appended to the bond a crudely drawn half-acknowledgment, half-affidavit, which is really neither. It is defective in that it does not show that any acknowledgment was tak-

en within the town of Mound Bayou. The mayor could take acknowledgments only in the town. It was defective in that it contains no seal as is required by law of all authorities having a seal. The record shows he had a seal. It is further defective in that it contains no jurat.

As it stands it is a void effort to take an acknowledgment. It being a void acknowledgment, it has no probative value and certainly does not prove the execution of the bond. The proof is overwhelming that P. R. McCarty never appeared before or acknowledged the execution of the bond before B. H. Cresswell. We thoroughly appreciate the rule that acknowledgments will not be overturned on a suspicion and unless the proof is clear and manifest. But here we have a case where not only every witness testified that the acknowledgment was a fraud but the conduct of P. R. McCarty together with all the surrounding circumstances bears out the fact that either B. H. Cresswell never wrote and signed the acknowledgment or that P. R. McCarty never appeared before him.

There is no seal on the acknowledgment. Nobody testified that B. H. Cresswell signed his name to it. Without the seal and jurat his signature must be proved.

*Is a non-expert witness competent to express his opinion as to the genuineness of handwriting when he states facts showing his familiarity with it?* If non-experts are acquainted with the handwriting, either from correspondence with the party or otherwise, they need not have actually seen her write her name at any time, but may from this previous experience express their opinion.

Non-experts may testify even though they will not swear positively, just so they think the writing is genuine or false. Abbott's Brief on Facts (3 Ed.), pages 509-20, 3 Jones on Evidence, sections 546, 547, 548, 550, 553, 554 et seq.

*Experts on handwriting.* Any writing admitted to be genuine or proved to the satisfaction of the court may

be used as a standard of comparison and the opinion of experts may be taken on the comparison. Abbott's Proof of Facts page 521; 3 Jones on Evidence, sections 546, 547, 548, 550 and 554.

*The chancellor's findings.* We appreciate fully the extent of the rule that the findings of a chancellor on the facts will not be disturbed unless they are manifestly wrong. We know that opposing counsel can cite a vast array of authorities to support this view but the rule is just as well established that where the record conclusively shows that there is insufficient evidence to justify the decree and the overwhelming weight of evidence is contrary to the chancellor's findings on appeal the supreme court will not hesitate to overturn the decree.

We say that the court erred here on these facts in finding Walker liable personally.

*Shands, Elmore & Causey,* for appellee.

I. The president of a life insurance company who signs the company's name by him as president as a surety on a bond, is properly held personally liable when the charter of the company does not permit it to become a surety even though the charter be a matter of public record and there be no false representations made by the president. *Medlin* v. *Ebernezer Methodist Church,* 129 S. E. 832; Tiff Agency (2d. Ed.), section 130; *Cheippo* v. *Chieppo,* 90 Atl. 940.

The cases cited by appellant on this point are all cases in which the public laws and public policy of the states were concerned. As he properly says, the one Mississippi case cited by him, that of *Merchants & Planters, etc.,* v. *Streuby,* 91 Miss. 211, 44 So. 791, 124 A. S. R. 651, can be distinguished from the case at bar. *Knickerbocker* v. *Wilson,* 47 N. W. 123, 21 A. S. R. 595, cited by appellant, does not hold with appellant's contention.

II. A surety who signs a bond on a condition that the bond be signed by another surety is liable unless the

proof show convincingly that the obligee in the bond accepted the first surety upon that condition. There is absolutely no testimony in this record to show that the Mound Bayou State Bank and its president and board of directors were acquainted by the condition now asserted by Walker, himself, that P. R. McCarty also became a surety. That was no attempt to show by any other witness that the bank or its officers had notice of any such alleged conditional signing by Walker.

Secret understandings of a surety with himself cannot affect his liability as to other parties. 1 Brandt on Suretyship and Guaranty (3 Ed.), page 847, section 450.

III. A party whose name appears on a cashier's bond is liable when the proof as to the forgery of her name is not clear and convincing. As to liability of P. R. (Priscilla) McCarty, the defense set up that her name was forged, and that the acknowledgment to the bond is fraudulent as to her.

The ruling of the court was that the testimony of the non-expert witnesses should be excluded but that the testimony of the expert witnesses was proper and admissible. This ruling was made at the conclusion of the trial after the court had heard all of the evidence tendered by the defense. The rule as to evidence of this type is that it is a matter in the discretion of the court. We find this rule stated in *Powers v. McKenzie,* 16 S. W. 559. See, also, *Griffin v. Working Woman's Home,* 44 So. 605.

The court said in *Johnston v. Bee,* 100 S. E. 486, that non-experts are excluded from testifying by comparison of signatures because the members of the jury and the judge are as capable of making the test in that way as a non-expert. In *First Nat'l Bank v. Hedgecock,* 127 N. W. 171, the testimony given by the witness was even stronger than that given by Mr. Roberts as to his qualifications, but the court held that no sufficient foundation had been laid for the admission of his testimony.

The proof offered was of the flimsiest kind and the court held properly that it was insufficient to prove the signature of Priscilla R. McCarty a forgery, especially in view of the fact that the bond was not only signed but was acknowledged.

IV.    The acknowledgment to the bond in this case is not surplusage and should not be so regarded, and has probative value.    The object of an acknowledgment to a bond is to render the bond recordable, and the bond in this case was eventually recorded.    Courts have consistently held that the purpose of an acknowledgment is to prove it.    The acknowledgment gives it additional force and dignity in the eyes of the law and renders it properly recordable in the public records of the county.

As the husband of P. R. McCarty was a director of the bank, it is hardly likely that she would not know of the execution of this bond.    Under the Laws of 1920, chapter 185, it was made the duty of the bank examiners to see that every officer of a bank furnished a satisfactory bond for the performance of his duties.    This bank did not close its doors until 1922 and we may presume that the bank examiners in doing their duty found this bond in the safe, and were satisfied with it.

V.    The acknowledgment of the bond herein is valid. This court has repeatedly held that as acknowledgments are often executed by persons of varying degrees of illiteracy, it will not strictly construe the laws in regard to acknowledgments.    The fact that the seal is not directly over the acknowledgment is immaterial.    The seal is on the same page and only slightly above the acknowledgment.    *Ladd* v. *Alcorn*, 71 Miss. 395, is directly in point.

The evidence fully justified the holding of the chancellor. This court has frequently held that it will not overthrow the decision of the chancellor when there is a con-

flict in the testimony. See especially *Indianola Compress & Storage Co.* v. *R. R. Co.,* 110 Miss. 602, 70 So. 703.

Argued orally by *Forrest G. Cooper,* for appellants, and *Lucy R. Somerville,* for appellee.

Anderson, J., delivered the opinion of the court.

Appellee, J. S. Love, on behalf of the state banking department, filed the bill in this case in the chancery court of Sunflower county against D. A. Carr, appellants, and others, said Carr's sureties on his bond as cashier of the Mound Bayou State Bank. Appellants were the only defendants who made defense to the suit. There was a trial on bill, answer, and proofs, resulting in a decree on the bond in appellee's favor for two thousand five hundred dollars, with interest and costs, from which decree appellants prosecute this appeal.

We will consider, first, the case against appellant J. E. Walker. D. A. Carr was cashier of the Mound Bayou State Bank at the time the bond involved was given. He was required by the directors of the bank to execute a bond for the faithful performance of his duties as such cashier. He executed the bond sued on in this cause, and among the sureties appearing thereon was the Mississippi Beneficial Life Insurance Company, a negro life insurance company, organized under the laws of this state, with its home office at Indianola, in this state. Appellant J. E. Walker was president of this life insurance company, and signed the bond for his company, as surety, as follows:

"Mississippi Beneficial Life Insurance Company, by J. E. Walker, President."

Appellee recognized that, under the charter powers of the life insurance company, it had no right to become surety on the bond, and that its action in attempting to do so was therefore *ultra vires.* The bill sought to hold J. E. Walker liable personally on the bond on the theory

that, in signing the bond for his company, he warranted both his authority to sign for his company, and also the authority, under the law, of his company to become surety on the band. He signed the bond by authority of the life insurance company. He practiced no deceit or fraud whatever, in executing the bond for his company. It was assumed by appellant Walker and all other parties in interest that the life insurance company had the right, under the law, to become surety on a bond. It was a Mississippi corporation, doing its principal business in the Delta section of the state, where the Mound Bayou State Bank was located. All persons dealing with the insurance company were affected with notice of its authority and powers. Under these facts, it is claimed that appellant Walker, by signing the name of the life insurance company to the bond as surety, in his capacity as president of the company, became personally liable on the bond because the act of the company in signing the bond was *ultra vires*.

The great weight of authority and, we think, the better reasoned cases answer this question in the negative. *Greenberg* v. *Lumber Co.*, 90 Wis. 225, 63 N. W. 93, 28 L. R. A. 439, 48 Am. St. Rep. 911, and note on pages 915, 916; *Thilmany* v. *Iowa Paper Bag Co.*, 108 Iowa, 357, 79 N. W. 261, 75 Am. St. Rep. 259; *Merchants' & Planters' Packet Co.* v. *Streuby*, 91 Miss. 211, 44 So. 791, 124 Am. St. Rep. 651.

An agent of a corporation entering into a contract for his principal cannot be held personally liable on the contract upon the ground that the act of the principal in executing the contract was *ultra vires*. In the execution of a contract, an agent does not warrant the authority of his principal to enter into the contract. The agent can be held personally liable only upon the ground that he practiced fraud upon the other party to the contract by representing that his principal had authority to enter into the contract. Parties contracting with a corporation are presumed to be informed as to the powers of the cor-

poration. An agent, in order to be held personally liable on the contract, must have been guilty of bad faith; he must have practiced deceit; he must have misled the other party to the contract in accepting the act of his principal.

The case of *Merchants & Planters' Packet Co.* v. *Streuby, supra,* it is true, is not a parallel case to this case on its facts, but the same principle was involved. Streuby signed the name of his corporation to a contract to subscribe for shares of stock in another corporation. Under the law of this state, at the time the contract was made and the case was decided, such a contract was void. It was sought to hold Streuby personally liable on the contract of subscription. Judge CALHOUN, delivering the opinion of the court, said:

"This action is to hold Streuby liable personally as a subscriber on his signature to the capital stock of a corporation. His signature is in these words: 'F. Streuby, for Levy Bros., Oil Mills, Ltd.' This oil mill was a corporation, and so it was powerless, in this state, to subscribe for stock of another corporation. This was equally known to him and appellant corporation, and no fraud or fraudulent representation appears. We have, therefore, not a case where the principal was or could have been bound by the subscription in any event; it being *ultra vires.* We hold that the signature did not bind Streuby personally, and adopt the reasoning of Judge BREWER in the two cases of *Holt* v. *Winfield Bank* (C. C.), 25 F. 814, and *Abeles* v. *Cochran,* 22 Kan. 410, 31 Am. Rep. 194."

We are of opinion that appellee failed to make a case of personal liability on the part of appellant Walker.

Appellant McCarty defended on the ground that her signature to the bond was forged, that she did not sign the bond herself, nor authorize any person to sign it for her. The execution of the bond by the sureties, including appellant McCarthy, appears to have been acknowledged by all the sureties before the mayor of Mound

Bayou.    Appellant McCarthy introduced several wit-
nesses who testified that they knew her handwriting, and
that, in their opinion, the name "P. R. McCarty" on the
bond was not in her handwriting.   The trial court, over
appellant's objection, ruled out this testimony.    That
was error.   A handwriting witness need not be an expert.
The unskilled may give an opinion as to the genuineness
of a signature, based on actual knowledge of the hand-
writing of the person whose signature is in question.
There were also introduced in her behalf numerous checks
written and signed by her, and some letters written by
her, during the year 1917, the year in which the bond was
given.   The originals of these checks and letters were sent
up with the record in this cause and are before this court
for inspection.   There is great dissimilarity between the
writing of appellant's name as it appears on the bond
and on the checks and letters.   The difference is appar-
ent at almost a glance of the eye.   These checks and let-
ters were shown to be in her handwriting.   On the other
hand, the evidence tending to show that she signed the
bond was weak and unsatisfactory.   Appellee argues
that her purported acknowledgment to the execution of
the bond was evidence that she signed it.   Without pass-
ing on the question whether such acknowledgment—an
acknowledgment of an instrument not required to be re-
corded for the purpose of constructive notice—has any
probative value, we are of opinion that giving it the
probative value contended by appellee, still the over-
whelming weight of the evidence shows that appellant
McCarty's name on the bond was a forgery, and that
therefore her purported acknowledgment of the execu-
tion of the bond was false.   It is true this was an issue
of fact before the chancellor, and it is furthermore true
that the chancellor's finding of facts will not ordinarily
be disturbed.   Nevertheless, where such a finding is
against the great preponderance of the evidence, it is the
duty of this court to substitute its judgment for that of

the chancellor. We think, as to the appellant P. R. Mc-Carty, this is that kind of case.

Reversed and judgment here for appellants.

*Reversed.*