431 So.2d 918 (1983)
T.C.L., INC., Rodney Conti and William J. Luscy, III
v.
David LACOSTE and Janet Lacoste.
No. 53728.
Supreme Court of Mississippi.
May 11, 1983.
*919 Lucien M. Gex, Jr., Waveland, for appellants.
Wittmann & Sneed, Harry P. Sneed, Jr., Gulfport, for appellees.
Before BROOM, HAWKINS and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Harrison County wherein David and Janet Lacoste, appellees, brought suit for breach of contract arising from the purchase of a marker for their child's grave and two cemetery plots located on each side of their child's grave in Resthaven Memorial Park. The contracts were executed by the Lacostes and Ray E. Fernandez, who was alleged to be an agent of T.C.L., Inc., a Louisiana corporation organized for the purpose of acquiring Resthaven Memorial Park in 1976.
The officers and stockholders of T.C.L. consisted of Rodney Conti, William J. Luscy, III, and Ted Tumminello. Conti denied Fernandez was authorized as an agent for T.C.L. to enter into contracts for the sale of burial plots. Therefore, T.C.L. refused to honor the Lacostes' contracts with Fernandez. At the conclusion of the trial, the jury was peremptorily instructed as to actual damages of the Lacostes and a verdict of $880 was returned in their favor. The jury also awarded the Lacostes $300,000 in punitive damages against T.C.L., Inc., Rodney Conti and William Luscy, appellants. Punitive damages were not, however, assessed against Fernandez. From the jury verdict and final judgment thereon, T.C.L., Inc., Rodney Conti and William Luscy have appealed. We reverse.
T.C.L., Inc., is a Louisiana corporation which was chartered in 1976 for the purpose of acquiring certain property known as the Resthaven Memorial Park Cemetery located in Harrison County. The corporation was licensed to do business in the state of Mississippi by the secretary of state in the same year. The principal stockholders in the corporation are Rodney Conti, William J. Luscy, III, and Ted Tumminello. The initial capital for operation of the corporation and acquisition of Resthaven Memorial Park was supplied by Tumminello. Tumminello apparently supplied $50,000 of which $42,500 went for the purchase of Resthaven and another $5000 or $6000 being paid to Ray Fernandez for a finder's fee for information and work in acquiring Resthaven. Fernandez in turn endorsed this check and gave it back to Conti in payment of a previous personal loan.
After acquiring Resthaven, T.C.L. verbally contracted with Cemco, a Mississippi corporation owned by Ray Fernandez, whereby Cemco agreed to maintain the grounds at Resthaven and handle the interment of deceased persons who owned a right to be interred at Resthaven prior to T.C.L.'s acquisition of the cemetery. In return, Cemco was to receive the opening and closing fees for interment and the option of purchasing plots for $50 per plot plus $30 per plot to be paid to T.C.L. in its perpetual care fund. Conti denied that Cemco or Fernandez was ever authorized by T.C.L. to sell any property owned by T.C.L. Although Fernandez at first asserted his duties, pursuant to the aforementioned agreement, involved all those necessary to the operation of a cemetery, including the sale of plots and vaults, he later retracted this statement, testifying he was never authorized *920 to sign or issue any deeds to cemetery plots.
Following this agreement, Fernandez began occupying the office building located on the grounds of Resthaven and continued to do so until February or March of 1980.
In February of 1979, appellees' young son died at Tulane Medical Center in New Orleans. The child was transported to Riemann's Funeral Home. An employee of Riemann's contacted Fernandez for the appellee and arranged for interment of the child at Resthaven. Thereafter, appellees met with Fernandez in the office on the cemetery grounds where they purchased a plot for their son.
In September of 1979, appellees again contracted with Fernandez for the purchase of a marker to be placed on their son's grave, at which time they paid $210. They also contracted to purchase the plots on each side of their son's grave for a total of $450, paying $50 down and $20 per month thereafter until the purchase price was paid. Fernandez represented that their son's marker would be installed by Thanksgiving of 1979.
Appellees continued to pay on these two plots until their check was subsequently returned by T.C.L., Inc., at which time it expressed its view that their contract with Fernandez was illegal. T.C.L., however, offered to sell the plots to appellees under similar terms, but without giving credit for those sums which had already been paid to Fernandez. The marker for their son's grave was finally installed only a few months prior to trial. Appellees incurred approximately $70 in additional expenses for installation of the marker which included a base for the marker and an installation fee enacted by T.C.L. as of March 3, 1979.
It was approximately December of 1979 when Mr. Fernandez's questionable activities began to surface. At that time appellees' attention was called to an announcement in a local newspaper which stated:
NOTICE!
TCL, Inc., owner of Resthaven Memorial Park, hereby advises all purchasers of cemetery plots, markers, bases or vaults, that TCL, Inc. is not responsible for any such purchases and purchasers must secure the items purchased from the selling agent. Only contracts executed with Rodney Conti or William J. Luscy, III, officers of TCL, Inc., are the responsibility of TCL, Inc.
It was also during the latter portion of 1979 that Fernandez was indicted on several counts for embezzlement of proceeds tendered to him in payment of several markers. Fernandez subsequently pled guilty to these charges.
Following the return of these indictments, Fernandez met with Conti and Luscy. The relationship was subsequently terminated at Fernandez's request in February or March of 1980. The money received by Fernandez from the appellees was used to keep the cemetery operational. Apparently the problem as to the marker purchased by the appellees for their son's grave stemmed from the fact that Fernandez failed to order the stone until the end of 1979 and had never paid for the same.
On March 3, 1980, T.C.L. issued a letter which required the payment of a $50 fee for installation of all markers in Resthaven to correct the previous irregularities created by the installation of markers by non-Resthaven personnel. It is unclear whether appellees' marker had been manufactured at this time.
T.C.L. never received any money from Cemco or Fernandez through Fernandez's entire tenure at Resthaven.
At the conclusion of the trial, the trial court granted the appellees a peremptory instruction on actual damages. The jury was also allowed to consider whether punitive damages were appropriate. A verdict was subsequently returned assessing appellees' actual damages at $880 and awarding them punitive damages in the amount of $300,000 against T.C.L., Conti and Luscy. Fernandez, however, was exonerated from liability as to punitive damages.
*921 Did the trial court err in peremptorily instructing the jury that appellees were entitled to actual damages which in effect peremptorily instructed the jury that Fernandez was clothed with either actual or apparent authority to contract on behalf of appellants?
Appellants contend that the trial court erred by peremptorily instructing the jury that appellees were entitled to actual damages because such amounted to a peremptory instruction that Fernandez was clothed with either actual or apparent authority to contract for the sale of cemetery plots on appellants' behalf.
In Pittman v. Home Indemnity Co., 411 So.2d 87 (Miss. 1982), this Court reiterated the well-settled rule to be applied on a motion for directed verdict and request for peremptory instruction:
First, we consider the question of whether the court erred in directing a verdict for Moss at the conclusion of all the evidence. In a motion for a directed verdict, and on a request for a peremptory instruction the court considers the evidence in the light most favorable to the plaintiff, disregards any evidence on the part of the defendant in conflict with that favorable to the plaintiff, and, if the evidence and reasonable inferences to be drawn therefrom would support a verdict for plaintiff, the motion for a directed verdict should be overruled and the request for a peremptory instruction should be denied. Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975).
(411 So.2d at 89)
In the present case, there was no dispute that Fernandez was an agent of the appellants. The dispute was as to the extent of such agency. Appellants denied Fernandez was authorized to sell cemetery plots and that his authority only extended to maintaining the cemetery grounds. Fernandez at first asserted he was authorized to sell cemetery plots on behalf of T.C.L. However, he later recanted this testimony.
Fernandez operated the cemetery for approximately three years and ten months. Appellants denied that to their knowledge any plots were sold during this period. Although people were admittedly interred during this period, appellants believed these were people who had previously owned plots at Resthaven prior to appellants' purchase thereof.
Fernandez asserted he had sold other plots in Resthaven besides those sold to appellees. The first plot sold to appellees occurred in February 1979. Evidently appellants failed to maintain a memorandum of all transfers occurring in the cemetery as required by law. See MCA § 41-43-45 (1981). However, Fernandez asserted the records of the transfers made by him were on file in the office at Resthaven.
In light of the evidence presented in this case, we believe the trial court erred in peremptorily instructing the jury on actual damages. While there was no dispute as to the actual relationship of principal and agency, appellants' testimony was to the effect that Fernandez was unauthorized to sell cemetery plots on behalf of the appellants. In Wutzke v. Wayne Lee's Grocery & Market, Inc., 199 So.2d 438 (Miss. 1967), this Court stated:
We are of the opinion that under these circumstances the factual issue of authorization should have been submitted to the jury, especially in view of Wayne Lee's testimony that he didn't want appellant jailed and that he didn't expressly order Parker to sign the affidavit upon which the arrest warrants were issued. Fowler v. King, 254 Miss. 61, 179 So.2d 800 (1965).
(199 So.2d at 441)
Because appellants denied that Fernandez's authority extended to the sale of cemetery plots, a factual issue was created as to the authorization of Fernandez. The resolution of this matter should have been left to the jury. We conclude that it was error to peremptorily instruct the jury on actual damages because it prevented the jury from passing on the factual issue of Fernandez's actual authority.
Was the verdict of the jury holding appellants Conti and Luscy personally liable erroneous?
*922 A corporation is an entity separate and distinct from its stockholders. Ill. Cent. R. Co. v. Cotton Seed Co., 166 Miss. 579, 148 So. 371 (1933). Generally, a stockholder is not liable for the acts of the corporation. Grapeco Bottling Co. v. Ennis, 140 Miss. 502, 106 So. 97 (1925). Nor is an agent of a corporation entering into a contract for his principal personally liable on the contract upon the ground that the act of the principal in executing the contract was ultra vires. The agent can be held personally liable only upon the ground that he practiced fraud upon the other party to the contract by representing that his principal had authority to enter into the contract. McCarty v. Love, 145 Miss. 330, 110 So. 795 (1927).
In an appropriate case and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical. This principle commonly referred to as piercing the corporate veil is applied, however, with great caution and not precipitately and will not be applied where those in control have deliberately adopted the corporate form in order to secure its advantages in the absence of any violence to legislative purpose by treating the corporate entity as a separate legal entity. 18 Am.Jur.2d, Corporations § 14 (1965).
In FMC Finance Corp. v. Murphree, 632 F.2d 413 (5th Cir.1980), the Fifth Circuit, following the general rule, asserted there must be such a unity of interest and ownership that the separate personalities of the corporation and the shareholder no longer exist and adherence to the fiction of separate corporate existence would under the circumstances sanction a fraud or promote injustice before the doctrine would be applied.
In Thames & Co. v. Eicher, 373 So.2d 1033 (Miss. 1979), this Court held the sole shareholder of a corporation personally liable in an action for breach of warranty and damages with reference to a new house. There, the proof showed that the corporation was no more than the alter ego of Mrs. Rogers who held all the stock in the company and was unable to recall who the directors and stockholders of the corporation were. Mrs. Rogers furnished construction funds for the corporation which appeared to be without substantial capital, no regular meetings were held and there were no minutes pertaining to its operation. In fact, Mrs. Rogers treated the corporation as though it was nonexistent.
While some of the elements found in Thames are present in the case sub judice, there are substantial differences. In the case sub judice, there were three stockholders and officers. No regular meetings were held nor were any minutes maintained pertaining to the corporation's operation. No capital was paid for the stock received by the three stockholders. The corporation had little funds in its operational account. However, it owned property appraised at a substantial value. When the corporation needed money for operation of the cemetery, appellant Conti purchased a large amount of cemetery plots to resell for his own profit. The corporation filed no returns with the state from 1976 through 1979 and was suspended from doing business in Mississippi as a result of this. Under these facts it was a jury question as to appellants Conti and Luscy being personally liable.
Because this case must be reversed, we comment on the sufficiency of the evidence presented to establish the appellant's net worth. Appellant Conti testified his net worth was approximately $250,000. Conti also testified that the property owned by appellant T.C.L. (Resthaven) was recently appraised at $350,000. However, a considerable amount of money was owed on the property. While Conti gave no specific amount as to the actual amount of what was owed on the property, it was purchased for $42,500 with Tumminello supplying the actual cash. Conti's and Luscy's portion of this amount was considered a loan with Tumminello acquiring 36% of the stock and Conti and Luscy each acquiring 32% of the stock. There was over $11,000 in T.C.L.'s trust account at Coast Federal. From the overall evidence, the net worth of T.C.L. *923 was at the very most $307,500. There was no proof presented, however, as to the net worth of appellant Luscy.
In First American National Bank of Iuka v. Mitchell, 359 So.2d 1376 (Miss. 1978), we stated:
Although punitive damages may properly be awarded against FANB due to the fraudulent acts of its officer or agent, $250,000 is so grossly excessive that the amount is shocking. Not only is the record deficient and unclear as to proof of actual damages above $35,000 no proffer was made of adequate proof of the net worth or financial condition of FANB. Snowden v. Osborne, 269 So.2d 858 (Miss. 1972). Absent some proper showing of the net worth or financial condition of FANB, we have no way to measure the correctness of the punitive damage award ($250,000) which on its face seems totally unrealistic upon the record. Accordingly, remand is necessary for retrial on the sole issue of damages: actual and punitive.
(359 So.2d at 1381)
The proof in the case sub judice failed to adequately establish the net worth of appellants to such an extent as to serve as a measure of the correctness of the punitive damages award. We also note that an award of punitive damages is granted in the nature of punishment for wrongdoing and as an example so that others may be deterred from the commission of similar offenses, thereby in theory protecting the public. Standard Life Ins. Co. of Indiana v. Veal, 354 So.2d 239 (Miss. 1977). Here, the award had the effect of destroying appellants' financial status rather than merely punishing them.
In view of the foregoing, we reverse the judgment of the trial court based on the granting of the peremptory instruction on actual damages and in holding appellants Conti and Luscy personally liable. We do not reach the remaining assignments of error which are unnecessary to our decision.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.