**In re HILL PETROLEUM COMPANY, Debtor.**

**Charles N. WOOTEN, Sr., Liquidator, Plaintiff,**

v.

**VICKSBURG REFINING, INC. and Chaney Oil Company of Vicksburg, Inc., Defendants.**

Bankruptcy No. 484–00201–LO.
Adv. No. 486–0031.

United States Bankruptcy Court, W.D. Louisiana, Lafayette–Opelousas Division.

Dec. 8, 1988.

Barry Ashe, New Orleans, La., for John M. Landis, Liquidator.

James P. Dougherty and David Sessums, Vicksburg, Mo., for Vicksburg.

James P. Dougherty, for Chaney Oil.

## MEMORANDUM OPINION

W. DONALD BOE, Jr., Bankruptcy Judge.

### Summary

In this case the Court finds that defendants, which are corporations under common control, are solidarily liable to the estate for petroleum products allegedly purchased by only one of them; that an alleged triangular setoff, one day prior to the filing of the Chapter 11 petition for relief, by which one of the corporations attempted to eliminate its debt to the Chapter 11 debtor by offsetting it against the amounts the Chapter 11 debtor purportedly owed to the other corporation is invalid and of no effect; that the estate is not liable under any agreement, equity, or usage for any sum for the cleaning of petroleum tanks; and that the estate is entitled to reasonable attorney fees.

### Introduction

Hill Petroleum Company (Hill) filed a petition seeking relief under Chapter 11 of the Bankruptcy Code on February 24, 1984. Charles N. Wooten who succeeded the original trustee was appointed and qualified as liquidator of the debtor estate on June 1, 1984. Mr. Wooten filed a petition for money due claiming that Vicksburg Refining, Inc. (VRI) was indebted to Hill Petroleum in the amount of $209,953.60 as evidenced by invoices totalling that amount. In its answer, VRI denied generally the allegations, but responded specifically that the invoices attached to the petition indicated that the product had been sold to Chaney Oil Company. Subsequently, Chaney Oil was added as a defendant. John M. Landis was appointed Successor Liquidator on July 14, 1986 and succeeded Mr. Wooten as plaintiff.

During the period from 1982 to 1984, Hill, a corporation with headquarters in Texas, owned and operated a refinery in Krotz Springs, Louisiana, which accounted for about 90 percent of Hill's output. Hill shipped petroleum products to various terminals for storage until they were sold to and lifted by a customer. Hill developed business relationships with both VRI and Chaney Oil.

VRI, whose assets have now been foreclosed, owned and operated a terminal located in Vicksburg, Mississippi, to which Hill's products were barged for storage. In addition to its terminaling and storage operations, VRI refined crude petroleum. Chaney Oil, also a Mississippi corporation, marketed petroleum products through various convenience store outlets. The relationships formed a triangular structure. Hill stored its products at VRI. Chaney Oil, one of Hill's primary customers, bought and lifted Hill products stored at the VRI terminal. What might have been a simple arrangement became somewhat complicated due to Hill's declining financial condition and subsequent bankruptcy, as well as the fact that Chaney Oil and VRI were both owned, operated, and represented by the same individual, Michael J. Chaney, which blurred the difference between the two corporate entities and resulted in various intercorporate transactions between Chaney Oil and VRI.

This action arises out of the Successor Liquidator's demand for unpaid monies due for the sales of Hill products in January and May of 1984. The facts will be more fully developed with each group of issues. I shall treat first the issues involving the most money.

### The May 1984 Sale

It is clear from the evidence that the May 1984 sale of the Hill products remaining in VRI tanks after the bankruptcy filing was negotiated and consummated be-

tween Hill representatives and Mr. Chaney. What is not as clear is whether Mr. Chaney negotiated the sale on behalf of VRI, now essentially defunct, corporation or on behalf of Chaney Oil. VRI had never purchased petroleum products from Hill before. The Successor Liquidator takes the position that the sale was made to Chaney Oil or alternatively that Chaney Oil is responsible for the purchase price because the distinction between the two entities was so blurred that their separate corporate identities should be disregarded.

■ The parties disagree as to which state's choice of law rule should apply to this sale. When a bankruptcy court adjudicates a contract dispute, it must apply state law unless the Bankruptcy Code provides otherwise. *Merced Prod. Credit Ass'n. v. Sparkman (Matter of Sparkman)*, 703 F.2d 1097, 1099 (9th Cir.1983). According to the great weight of authority, a bankruptcy court must look to the law of the state in which it sits to determine the choice of law rules governing interpretation of a contract. *Dynamic Enterprises, Inc. v. Fitness World of Jackson (In re Dynamic Enterprises, Inc.)*, 32 B.R. 509 (Bankr.M.D.Tenn.1983); *Powell v. Illinois ex rel., Illinois State Scholarship Commission (In re Powell)*, 29 B.R. 346, 349, 8 C.B.C.2d 506, 509 (Bankr.D.Colo.1983); *Harrett v. McColley (In re O.P.M. Leasing Services)*, 28 B.R. 740, 747–748 (Bankr.S.D. N.Y.1983); *Fisher v. Smith (In re Medico Assocs., Inc.)*, 23 B.R. 295, 301 (Bankr.D. Mass.1980); *See also, Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, the Louisiana choice of law rule should be applied in this case to determine whether Louisiana law or whether Mississippi's Uniform Commercial Code should be applied.

■ Louisiana determines the applicable law by a process known as interest analysis. *See Stickney v. Smith*, 693 F.2d 563, 564 (5th Cir.1982); *Bell v. State Farm Mutual Automobile Ins. Co.*, 680 F.2d 435 (5th Cir.) *cert. denied*, 459 U.S. 1088, 103 S.Ct. 572, 74 L.Ed.2d 934 (1982); *Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La. 1973). Interest analysis requires the court to balance the relative interests of the forum and foreign jurisdictions. The Successor Liquidator sets forth the following as Louisiana's interests in the May 1984 sale: the Krotz Springs refinery represents by far the largest physical asset of Hill Petroleum and produces approximately ninety percent of its products; ensuring that the Louisiana trustee (now Successor Liquidator) is permitted an opportunity to protect, preserve, recover, and distribute assets of the bankruptcy estate; the injury (failure to render payment) occurred in Louisiana; extending the protection of Louisiana law to its injured citizens; protecting justified expectations (payment in Louisiana) of the trustee, liquidator, and estate; ensuring that Louisiana citizens collect any refund due them as a result of transactions consummated in Louisiana; and applying the law of the forum state for purposes of ease of application, familiarity, and sound judicial administration.

Defendants, VRI and Chaney Oil, urge that the Mississippi Uniform Commercial Code does not allow an oral contract of sale and that the U.C.C. is applicable. Both defendants and Hill have their principal place of business in U.C.C. states, Mississippi and Texas, respectively. The products had been located in Mississippi prior to the sale at issue, and records of all sales of Hill's products were kept in Mississippi.

A balancing of the various interests favors the application of Louisiana law to the May 1984 sales. Although Hill is headquartered in Texas, the Krotz Springs refinery represents its largest physical asset and is responsible for the vast bulk of its production. The majority of the company's assets are located in Louisiana and the Successor Liquidator, the former Liquidator, and original Trustee are all Louisiana residents. Many of Hill's numerous creditors are located in Louisiana, while Mississippi creditors are relatively few. For these reasons, the Court finds that the transactions involved bear an appropriate relationship to Louisiana and that Louisiana's interests are weighty and are sufficient to warrant the application of Louisiana law.

■ Under Louisiana law, three circumstances concur to the perfection of a contract of sale, to wit, the thing sold, the price, and the consent of the parties. La. Civ.Code art. 2439. The verbal sale of movables like petroleum products is valid; however, if the price or value is in excess of $500, the contract must be proved by at least one witness and other corroborating circumstances. La.Civ.Code arts. 2441 and 1846.

The record clearly establishes that Hill Petroleum representatives reached an agreement with Mr. Chaney on the products to be sold, the quantity, and the price. Negotiations between Mr. Chaney and the Hill representatives ended in May 1984 with an agreement by Mr. Chaney to purchase and Hill Petroleum to sell 69,132 gallons of regular gasoline at $.78 per gallon, 63,378 gallons of unleaded gasoline at $.78 per gallon, and 80,262 gallons of No. 2 diesel fuel at $.76.5 per gallon. The Successor Liquidator claims that as a result of this sale, Chaney Oil, or alternatively, VRI, is indebted to Hill Petroleum in the amount of $176,684.13, (the sale price incorporated the federal motor fuel tax). The defendants admit these terms of sale are correct, but contend that the sale was to VRI only and in no way involved Chaney Oil. Therefore, it need only be determined on which corporation's behalf Mr. Chaney negotiated the sale, and whether the separate identities of the two corporations should be disregarded.

The written communications in evidence concerning the May 1984 sale, including letters from Mr. Chaney to Hill representatives and to Mr. Sandoz, the trustee; the letter from Mr. Nelson, Vice President of Finance and Administration at Hill to Mr. Sandoz; as well as the telex from Mr. Johnson, Vice President of Marketing of Hill to Mr. Chaney, said to memorialize the agreement reached earlier over the phone —all refer to the sale as being between VRI and Hill Petroleum or reflect that Mr. Chaney was President of VRI. Indeed, virtually all other corporate executives had left VRI because of its poor financial condition, which Mr. Chaney in testimony described as "unviable". There is no evidence that anyone from Hill overtly challenged any of these communications as incorrect or for that matter felt any need to make clear that the sale was instead to Chaney Oil.

Chaney Oil was a primary customer of Hill. Although VRI typically did not buy any products from Hill, this does not necessarily rule out VRI as the purchaser. It can be argued that the circumstances surrounding the May sale were not typical. Hill's products had been sitting in VRI's tanks for quite some time, yet the ability of Hill to pay terminaling fees was uncertain. It may have been in VRI's best interest to buy the remaining Hill products to make space available as quickly as possible for other customers. Hill's trustee was striving to make the best deals as quickly as possible on the products it had remaining in various terminals. To sell to anyone the products stored at the VRI terminal would have furthered the trustee's goal.

The depositions of Hill representatives and the trustee make clear beyond doubt that most dealings with Mr. Chaney were on a very informal basis and that no real effort was made to establish in what capacity he was acting in any given transaction. Agreement on the particular sale at issue seems to have been reached in a phone conversation between Mr. Johnson and Mr. Chaney. Subsequently, Mr. Johnson sent Mr. Chaney a telex which according to Mr. Johnson was intended to memorialize the phone conversation. This telex specifies VRI as the buyer, though Mr. Chaney himself has contended that this telex was not a final expression of the agreement. However, Mr. Johnson of Hill sent the invoice to Chaney Oil indicating that Chaney Oil was the buyer. Mr. Johnson testified that this was done at Mr. Chaney's request and that he did not think much of it because ordinarily when sales were negotiated with Mr. Chaney, Chaney Oil was the purchaser. Although Mr. Chaney strenuously denied ever requesting that the invoice be sent to Chaney Oil, this contention which relied in part on his assertion that Chaney Oil lacked financing or resources for the purchase is not very credible. VRI, not Cha-

ney Oil, was in financial trouble. There is also a lack of evidence suggesting that Mr. Chaney tried to correct the alleged error. Mr. Chaney did, however, attempt to explain this by indicating that communications with Hill Petroleum had completely broken down.

The evidence clearly establishes that Chaney Oil reported to the Mississippi State Tax Commission (the Commission) that it purchased from Hill the exact quantities of regular and unleaded gasolines agreed upon. This gasoline was sold by Chaney Oil at its convenience store outlets. In a letter dated June 20, 1984, Mr. Grantham, Treasurer of Chaney Oil, reported to the Commission that 69,132 gallons of regular and 63,378 gallons of unleaded were purchased, but stated that Chaney Oil had only lifted 37,498 gallons since the remainder did not yet meet specifications and that Chaney Oil would report the other 95,012 gallons if and when used. In subsequent letters, much of the remaining product was reported as lifted and used by Chaney Oil.

The explanation for this offered by the defendants is weak. Both Mr. Chaney and Mr. Grantham testified that it was necessary to report the sales as Grantham did to avoid the tax consequences that would have resulted if VRI rather than Chaney Oil had been reported as the purchaser. Mr. Grantham also testified that he reported the sale as made to Chaney Oil in order to make matters more understandable for the Commission because Hill had reported to the Commission that it had sold the product in that specified quantity to Chaney Oil. Mr. Grantham explained that the Commission receives notification from the various petroleum companies, like Hill, concerning how much product per month is sent to Mississippi. On the receiving end, the Mississippi companies, like Chaney Oil, must show what they have received. Ultimately, the amounts sent must correspond with the amounts received. Mr. Grantham further explained that because Hill reported the sale of the large quantities in May to Chaney Oil, it was necessary for Chaney Oil to report itself as the buyer for the Commission's records, even though VRI may have been the actual buyer. Grant-

ham stated that had Chaney Oil reported that it had purchased the product from VRI, then it would have to pay tax twice at $.09 a gallon. Grantham also stated that he believed that because VRI was a terminal, it could not pay taxes because it was not bonded.

This explanation offered by Mr. Grantham and supported by the testimony of Mr. Chaney actually supports a finding that Chaney Oil was the purchaser. Even if it is accepted that Mr. Chaney represented himself as negotiating on behalf of VRI, it is clear that Chaney Oil paid the taxes on the product it lifted and reported itself as the purchaser of the entire amount. Yet, there is no evidence that any consideration passed from Chaney Oil to VRI for the product lifted. Moreover, at least in the eyes of the Mississippi tax authorities, VRI was not authorized to buy regular or unleaded gasolines. The evidence indicates that VRI did not have the capability to buy Hill's petroleum products because it was not registered to do business as a resaler in Mississippi.

The corporate veil may be pierced to reach "alter egos" of the defendants directly involved. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.;* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950); *Talen's Landing, Inc. v. M/V Venture,* 656 F.2d 1157, 1160–1162 (5th Cir.1981). This is particularly true where the near identity of two corporations should be disregarded to prevent manifest injustice to third parties or where one corporation becomes the conduit of another. *Talen's Landing, Inc., supra; Houston Oil Field Material Co. v. Stuard,* 406 F.2d 1052 (5th Cir.1969).

Factors that the Fifth Circuit has considered relevant in making a determination to pierce the corporate veil include: confusion of corporate records and finances; one individual's domination of more than one corporation; failure to follow usual corporate formality; and undercapitalization. In *Talen's Landing, supra,* the court found intercorporate loan transactions to provide the most significant example of nonseparateness. In that case, three corporations

were dominated by one individual who would solely upon his own discretion make intercorporate loans merely by transferring the funds from one corporation to another without any loan documentation.

Many of the factors present in *Talen's Landing* are also present in the case before this Court. Since at least 1982, Michael J. Chaney had been President, Chief Executive Officer, majority shareholder, and a director of both Chaney Oil and VRI. He owned the controlling interest in both. He owned 78% of the stock of Chaney Oil and his wife the remaining 22%. Mr. Chaney testified that on a monthly basis since 1978, Chaney Oil had provided goods and services to VRI for which VRI was not able to pay. He owned more than 50% of the stock of VRI. He also stated that he had personally "kicked in" funds to meet the VRI payroll about once a month at least for the months just prior to trial. On the whole, Mr. Chaney's testimony indicates that on numerous occasions, Chaney Oil provided goods and services to VRI whenever needed and that only occasionally was an invoice or other document created showing that VRI had utilized a particular good or service provided by Chaney Oil. At one point in his deposition, Mr. Chaney stated that VRI was not able to pay so there was no reason to invoice them.

In light of the above mentioned factors as well as Chaney Oil's reports to the Mississippi State Tax Commission, the fiction of separate corporate identities should be disregarded to avoid an absurd result and an injustice to the estate. VRI and Chaney Oil are found solidarily liable for the purchase price of $176,684.13, plus interest from date of judicial demand.

 Coincidentally, the same result would have been reached had Mississippi law been applied to determine the terms of the sale. It is not contested by any party that a sale took place for 69,132 gallons of regular gasoline, 63,378 gallons of unleaded gasoline, and 80,262 gallons of No. 2 diesel fuel for a total of $176,684.13. However, defendants seek to use Section 75–2–202 of the Mississippi Code to establish VRI as the buyer. 75–2–202 provides that terms with respect to which the confirmatory memoranda of the parties agree or which are intended to be the final expression of their agreement with respect to such terms may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. Based on this provision, the defendants argue that because the telex referred to VRI as the buyer, it cannot be contradicted. It is too strained to contend that the parties intended at the time for the telex to take on such significance. This is evidenced even in the deposition of Mr. Chaney stating that the telex merely reflected some preliminary discussions regarding the disposition of the products. The conduct of the parties along with the various written communications evidence the sale that took place. Even under Mississippi law, an oral contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by the parties recognizing the existence of a contract, even though the writings of the parties do not otherwise establish a contract. Miss.Code Secs. 75–2–204(1), 75–2–207(3).

Mississippi courts have also refused to maintain rigidly the distinct corporate identity where to do so would subvert the ends of justice. *See, Highway Development Co. v. Mississippi State Highway Commission*, 343 So.2d 477 (Miss.1977). In appropriate cases and in furtherance of the interests of justice, Mississippi courts will pierce the corporate veil. *See, e.g., TCL, Inc. v. Lacoste*, 431 So.2d 918 (Miss.1983); *Beco, Inc. v. American Fidelity Fire Ins. Co.*, 370 So.2d 1343 (Miss.1979); *Highway Development Co., supra.* In *Beco* the Supreme Court of Mississippi found that separate corporate existence of parent and subsidiary or affiliated corporations will not be recognized where one corporation is so organized and controlling, and its business conducted in such a manner, as to make it merely an agency, instrumentality, adjunct, or alter ego of another corporation. *See also, Johnson & Higgins of Mississippi v. Commissioner of Insurance*, 321 So.2d 281 (Miss.1975). The *Beco* Court further stated that the fiction of separate corporate identity of two corporations will not be

extended to permit one of the corporations to evade its obligations or to promote fraud, illegality, or injustice. Thus, Mississippi law strengthens the finding that the separate identities of VRI and Chaney Oil should not be recognized for purposes of this transaction with Hill.

### The January 1984 Sale—The Setoff Issue

█ It is uncontested that during January 1984, in five separate and separately invoiced sales transactions, Chaney Oil purchased and subsequently lifted $33,269.47 worth of Hill products in storage at the VRI terminal. Hill has never received any funds for these sales. On February 23, 1984, the day before Hill filed bankruptcy, Mr. Chaney claims on behalf of Chaney Oil and VRI to have offset amounts purportedly owed to VRI by Hill—$47,400 for terminaling and administrative fees owed for January, February, March, and April— against amounts that Chaney Oil owed to Hill for January sales. Mr. Chaney also directed that Chaney Oil lift 18,115 gallons of Hill's No. 2 diesel at $.78 a gallon (a figure set by Mr. Chaney) to make up the difference.

The Successor Liquidator claims that Mr. Chaney had no authorization from anyone at Hill to carry out this setoff or lift the No. 2 diesel in storage at VRI and that the purported setoff could not be lawfully accomplished. I find no evidence to allow this Court to agree with defendant's contention that this particular setoff was requested and authorized by Hill Petroleum and ratified by the trustee. At most, the evidence only shows some discussion regarding the mere possibility of a setoff.

█ A creditor may offset a mutual debt owed to the debtor that arose before the commencement of the bankruptcy case against a claim against the debtor that arose before the commencement of the case, subject to the limitations set forth in 11 U.S.C. Sec. 553. In the present case, the setoff is invalid because the debts were not mutual and, to the extent the creditor's claim includes fees for March and April, the setoff is additionally invalid because partially post-petition.

█ To be mutual, debts must be in the same right and between the same parties standing in the same capacity. *England v. Industrial Comm'n. of Utah (In re Visiting Home Services, Inc.)*, 643 F.2d 1356, 1360 (9th Cir.1981); *Waldschmidt v. Columbia Gulf Transmission Co. (In re Fulgham Constr. Corp.)*, 23 B.R. 147, 151–153, 7 C.B.C.2d 155, 160, 9 B.C.D. 772, 775 (Bankr.M.D.Tenn.1982); *Ohio–Erie Corp. v. BancOhio National Bank (In re Ohio–Erie Corp.)*, 22 B.R. 340, 342, 6 C.B.C.2d 1366, 1368, 9 B.C.D. 430, 431 (Bankr.N.D. Ohio 1982); 4 *Collier on Bankruptcy* Sec. 553.04[2] at 553–18 (1988). Courts strictly construe the mutuality requirement. 4 *Collier on Bankruptcy* Sec. 553.04[1] at 553–16 (1988). The established formula for finding mutuality is that the claims be owing to and owing in the same rights and capacities. *See Virginia Block So. v. Bushong (In re Virginia Block Co.)*, 16 B.R. 560, 5 C.B.C.2d 317 (Bankr.W.D.Va. 1981). In *Virginia Block*, the court held that a triangular tradeoff of accounts of alter egos lacks the mutuality required by Section 553. *Id.* Two entities, even though related, may not aggregate their debts and claims for setoff purposes. Collier states:

> "One subsidiary may not set off a debt to the debtor against a debt owed to the debtor by another subsidiary. Similarly, a parent corporation may not set off a debt owed to the debtor against its subsidiary's claim against the debtor. A debtor of the debtor's estate cannot set off its debt against a claim of its employer. A husband and wife may not set off their personal debt to the debtor against a claim of the husband's company against the debtor." 4 *Collier on Bankruptcy* (1988) Sec. 553.04[2] at 553–19 (footnotes omitted).

The narrow exception to the rule against three party, "triangular" setoffs, occurs where there is a formal agreement by the debtor that two entities may aggregate debts owed to and from the debtor. *Id.* No such agreement exists in the case at

bar. A debtor prior to bankruptcy may have informally permitted a creditor to set off its obligations to the debtor against the debtor's debt to a related entity. However, such debts are not mutual. See, *In re Virginia Block Co., supra;* 4 *Collier on Bankruptcy* Sec. 553.04[2]. Even if the Court assumed that in the instant case VRI had transferred any claim it may have had against Hill to Chaney Oil, Sec. 553 prohibits setoff of any such claim transferred by a creditor within ninety days before the filing of the petition, and while the debtor was insolvent. 11 U.S.C. Sec. 553(a)(2)(B). The debtor is presumed insolvent on and during the ninety days immediately preceding the filing of the petition. 11 U.S.C. Sec. 553(c). The asserted setoff one day prior to the filing of the petition does not pass muster on either factual or legal grounds.

Therefore, Chaney Oil owes Hill Petroleum $33,269.47 for the January 1984 purchases, with interest from the date of judicial demand.

### Tank Cleaning Fees

■ The defendants take the position that VRI is entitled to cleaning fees of $25,000 for each of the three tanks that separately stored Hill's unleaded gasoline, leaded gasoline, and No. 2 diesel fuel.

Tank cleaning fees were not provided for in the original written terminaling agreement between VRI and Hill. After December 1982, when this written agreement expired, Hill and VRI exchanged various drafts of a new or renewal agreement, none of which were ever fully executed. Hill continued to store its product at VRI pursuant to an oral terminaling contract based essentially on the prior written agreement and unexecuted drafts. Nothing in the record suggests that the previous agreement or drafts provided in any way for tank cleaning fees. However, the defendants maintain that it is customary in the industry practice to charge such fees to parties upon the completion of the terminaling services. The Successor Liquidator by contrast contends that such fees are not customary for leaded and unleaded gasoline and diesel fuel.

Under Louisiana law, when the parties make no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the provisions of a contract, but also to what is necessary for the contract to achieve its purpose and to whatever is implied in the contract by law, equity, or usage. La.Civ. Code art. 2054. Equity is based on the principle that no one is allowed to enrich himself unjustly at another's expense. Usage is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation. La.Civ.Code art. 2055.

The only evidence supporting the position that tank cleaning fees are to be paid at the end of a terminaling agreement is testimony of Mr. Chaney to the effect that it is customary for the owner of a product to pay entities such as VRI a tank cleaning fee where the product is removed from the tank. There is considerable testimony to the contrary from Mr. Meeds and Mr. Johnson. Mr. Meeds' testimony emphatically denied any such custom. Mr. Johnson did say that it would not be unusual for Hill to pay VRI for tank cleaning fees *if* it had been provided for. However, the parties never significantly discussed, much less reached an agreement on, tank cleaning fees. Both Mr. Meeds and Mr. Johnson were disinterested witnesses. There additionally is no evidence that Hill's use of VRI's tanks actually *caused* VRI to incur tank cleaning charges. While tank cleaning may have to occur where lead or certain other substances might contaminate a different petroleum product later placed in the tanks, there is no persuasive evidence that it was necessary to later place a different petroleum product in any of the tanks.

The defendants have failed to offer any persuasive evidence that it is a usage, custom, or practice of the industry for a company to pay tank cleaning charges or to commit itself to a sum as large as $75,000 without prior discussion or any control over the procedure. Louisiana Commercial Law 1–205(2) provides in pertinent part that a

usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. La.R.S. 10:1–205(2). This the defendants have not accomplished. Therefore, it is now held that the defendants are not entitled to tank cleaning fees.

### Attorney Fees

■■■ Finally, Plaintiff claims that Defendants are liable for reasonable attorney fees for the prosecution and collection of this claim pursuant to Louisiana Revised Statute 9:2781. LSA–R.S. 9:2781(A) provides that when any person fails to pay an open account within 15 days after receipt of written demand therefor correctly setting forth the amount owed that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment is rendered in favor of the claimant. "Open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. La.R.S. 9:2781(C).

The requirements of R.S. 9:2781 were satisfied when Dan Keefe, of the office of Charles N. Wooten, Ltd., which was then acting as the duly appointed attorney for the Trustee, made formal written demand for the correct amount of $209,953.60 in a letter to Michael J. Chaney dated July 20, 1984. The invoices totalling this amount were enclosed with the letter. Because payments were not made within fifteen (15) days, Defendants are now liable for reasonable attorney fees incurred in prosecuting and collecting this claim.

Where a federal court exercises diversity jurisdiction in an otherwise state law action, state law with respect to attorney fees awards applies. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975); *Merced Prod'n Credit Ass'n v.*

*Sparkman (Matter of Sparkman)*, 703 F.2d 1097, 1099 (9th Cir.1983). Various courts have found that the same rule should apply where a federal bankruptcy court exercises jurisdiction over a dispute involving state law. *See e.g. Matter of Sparkman, supra; Howe v. Scannell (Matter of Scannell)*, 60 B.R. 562, 567 (Bank.W.D.Wis.1986); *Sonoma v. Rockerfeller Center Constr. Corp. of California (In re Sonoma V)*, 23 B.R. 789, 796, (9th Cir. BAP, 1982); *Wetzel v. Goldsmith (Matter of Comstock)*, 16 B.R. 206 (Bankr. D.Idaho 1981); *Teter v. Teter (In re Teter)*, 14 B.R. 434, 437 (Bankr.N.D.Tex.1981). The position of these courts is that a state statute allowing attorney fees should be applied in bankruptcy cases involving state law disputes provided that the state statute is, as here, applicable to the facts of the case. In the present case the disputes essentially involved state law, although Chaney Oil's invalid setoff defense presented a federal question. I only decide at this time that the estate by R.S. 9:2781 is entitled to attorney fees. Whether state or federal criteria should be used to determine the precise *amount* of those fees is an issue for another day. *Compare* the standards used in *Hoskins v. Ziegler*, 506 So.2d 146 (La.App. 4th Cir.) *cert. denied*, 512 So.2d 460 (La.1987) and *Guillory v. Guillory*, 339 So.2d 529 (La.App. 4th Cir.1976), *with* those in *Matter of First Colonial Corp. of America* 544 F.2d 1291 (5th Cir.1977) and *Johnson v. Georgia Highway Express, Inc.)*, 488 F.2d 714 (5th Cir.1974).

The Court hopes that the fee quantification issue can be resolved by stipulation. Since there is no specific evidence or argument regarding the amount that should be paid, sound judicial administration suggests, and the Court will require, that a fee application be filed by the Successor Trustee as prevailing party.

### Conclusion

Defendants, Chaney Oil and VRI are solidarily liable to the estate for the sum of $176,684.13 plus legal interest from date of judicial demand for the Hill products remaining in VRI's tanks purchased in May

1984. Chaney Oil is additionally liable to Hill in the sum of $33,269.47 plus legal interest from date of judicial demand representing amounts due pursuant to sales made in January 1984. The Successor Liquidator for the benefit of the estate is entitled to attorney fees in an amount to be subsequently determined by this Court. A Judgment consistent with this Memorandum Opinion is being issued in a separate document.